May it please the Court. Good morning, Your Honors. My name is Alan Agbige and I'm here on behalf of the Petitioner, Isabella Iazichyan. You know, as this case is before this Court on a number of issues. One is credibility and the other two issues are whether or not there's past persecution and then whether or not if there's no past persecution, if there will be a credible fear of future persecution. As to the credibility finding, Your Honors, I don't want to waste too much of the Court's time or else we would be here all day long. I'm sure you've reviewed the record in length and the immigration judge's decision which the BIA summarily affirmed is just interesting to say the least. The immigration judge, Your Honors, made up facts that do not exist in the record, made up inconsistencies that do not exist in the record to support his credibility finding. Again, this is a pre-real-idea case, but if we read the record of the proceedings, 99 percent of the inconsistencies that were referred by the immigration judge do not exist. The another thing I find with all due respect, baffling, Your Honors, is that the judge completely, completely disregarded the expert witness' testimony and also the pastor who appeared on behalf of the Petitioner to testify that she, in fact, attends the church. There isn't even a single mention that this expert testified in court. The judge could have said, well, I heard the expert testify, but I didn't believe a word he said. There isn't a single mention, just like that part of the testimony just disappeared from the record in the judge's mind. And, I mean, these experts were there to testify for a purpose, Your Honors. It was not a formality. Let me just bring two credibility issues to your attention. You can respond to them as quickly as you would like, but there was the IJ's concern over her medical treatment and whether or not she actually received an X-ray. Okay. Now, when I read the transcript of that exchange, it seems as though the IJ may not have really understood. That's exactly correct, Your Honors. Over her testimony. Is that right? That's exactly correct, Your Honors. And without going to a specific location in the transcript, she testifies that she was asked, were you X-rayed? And she said, well, they only do X-rays for cases where there's serious head injuries and what have you. And then the testimony goes on, and then they ask, well, are you saying you were not X-rayed? She says, no, no, I had a head injury, so I was X-rayed. So she never says that she was an X-ray, but the judge just basically took that statement and ran with it. He never gave her an opportunity to explain whether or not by saying they only take X-rays of head injuries, does that mean, are you saying that you did not receive an X-ray? No, she said she used the word simple. It was a light injury or light concussion. Exactly. And then she explains that basically in passing she explains, well, my concussion was deemed to be light and not severe. Now, just in all fairness, Your Honors, the I-589, the asylum application does state in her own words that she sustained a severe concussion, thus leading to the eye injury. Now, these are just, in her opinion, the eye injury was a significant aftermath of the head injury. That's why she deemed the head injury to be significant. She's not using medical terms here. So the fact that the testimony at the hearing, she says that my concussion was deemed to be light, in no way contradicts even her written declaration, Your Honors. The other issue that caught my eye, just happening, of all the issues that the IJ went through was the business about her not having a baptismal certificate. What was that all about? Okay. You know, she did have a baptismal certificate. She had a letter from, I believe, eight members of her church to confirm that she, in fact, was a member of the church. I think the concern was it wasn't, didn't have a letterhead or something. Yeah. But so I don't know of any regulations that require a letter from church members to be on a letterhead. The pastor who testified in court, who, again, the immigration court and the agency ignored, says that in his opinion, she was baptized because of the fact that she's a true believer. She attends the church regularly. There's no requirement, Your Honors, of corroborating evidence unless there's a big inconsistency that arises. The judge, in fact, in his decision incorrectly states that while testimony alone may be sufficient, but when evidence can, corroborating evidence can be obtained, it should be obtained, or at least explain why it's not obtained. That's not the law. The law is if the testimony is inconsistent, then you should obtain a record. And as far as the inconsistency, Your Honors, where that came up, the government brought up a point that, well, at the asylum interview, you said that you weren't baptized. But she explained that, I never said I was not baptized. I was not baptized by the holy water, and I'm not sure, Your Honor, what she really meant by that. But then the government really didn't go anywhere with that. She just basically let it go and just moved on. It's interesting, Your Honors, that the judge, in fact, relied on testimony pertaining, a statement made at the asylum office, which is not evidence. The asylum officer was never there to testify, nothing. We haven't mentioned that. He brings up that point and relies on that alleged inconsistency, but then ignores all the expert testimony and the witness testimony that she presented in support of her claim. I didn't find a single basis of the judge's decision, basis for the credibility finding, to be supported by the record, not a single. He actually went on and assumed that she was credible. Well, for the purpose, this is typical of this immigration judge, Your Honors. He went on and stated that even assuming that she's credible, I don't think that there was past persecution or a well-founded fear of future persecution. Again, Your Honors, if we throw out every single evidence that we presented in support of the claim, including her testimony, that may be the case. But we have an expert witness who specifically said, Your Honors, that someone with her profile, and we have to consider she's an Armenian and she's a member of the Charismatic Church, two minorities who basically are frowned upon by the Georgian government, by the vigilante groups. The expert specifically said that someone with her profile, Armenian plus evangelical, there's a high certainty that she will be subject to persecution if she returns to Georgia. Now, the fact that the government attorney argued that the entire expert's testimony should be disregarded because he thought that there would be pattern in practice is just, it's ludicrous, Your Honors. He specifically said that I'm not saying whoever comes here has to be automatically granted asylum, but in my view, in my experience, given the fact that I do research on this country, I've written books on this country, there is a pattern in practice of persecution based on their ethnicity and membership in this religious organization. There was not a single piece of evidence in the record presented by the government that rebuts that testimony. The pastor even himself, he indicated, even though he was not an expert witness, he's a percipient witness. He said, I know pastors who teach in Georgia, who preach in Georgia, who have come here to visit. And specifically, Your Honors, his testimony was that he spoke with a visiting pastor from Georgia who indicated that the Orthodox Church, who is strongly favored by the Georgian government, in essence, there is no separation of church and state in Georgia, that the Orthodox Church doesn't accept their denomination and considers them to be a sect. Dr. Deknejian testified that this organization is not allowed to be registered as a religious organization. I mean, I think that there clearly is a... Is your claim based more on fear of future persecution or past persecution? You know, that's where I was going, Your Honors. I think there is past persecution. Clearly, there's at least three incidents that happened to her. One incident that happened to her husband. But even for the sake of argument, if we argue that there's no past persecution, I think it's even under the strictest view of these standards for the 10% likelihood of future persecution. Clearly, there's a well-founded fear of future persecution. Clearly. And another concern, Your Honors, was that there was an issue because there was a new government, basically, that was just recently elected a few months before the hearing. And Dr. Deknejian, in all honesty, testified, yes, this is called the Rosa Revolution, the whole world is relying on this president to change things. But he said that, based on my experience, based on my years of research on these previous Soviet republics, nothing really changes. Shabar Nazem, which was the previous president, made the exact same promises. Nothing changed. And he was very doubtful that anything would change. In fact, Your Honors, the very recent country conditions from 2008 from Georgia, if you read it, basically, it's a repetition of the 2002 or 2003 reports. Nothing has changed. The Orthodox Church still is strongly favored by the government. There's evidence of Armenians, Armenian churches having issues. So really nothing has changed, just like Dr. Deknejian. What relief are you asking for? I believe because everything was, in fact, considered. And it's interesting that the BIA itself, while it affirmed the judge's decision, said that we overturned the judge's conclusory denial based on discretion. I would ask, Your Honors, to grant the asylum. But at the very least, I would ask that the matter be remanded for a grant of withholding, because, clearly, that's not a discretionary relief. And for the attorney general, for the court to exercise its discretion to grant the asylum. But I think because everything has been addressed, changed conditions, past persecution, future persecution, credibility, even discretion has been addressed, I would ask that the court, in fact, even go to the court of law. Is it correct that the— Grant the asylum. Is it correct that Father Bassali is now arrested? No, Your Honor. He was, in fact, released a couple years ago, and he's back in action, essentially. He has his own— Was he arrested? He was arrested, yes, Your Honor. But Dr. Deknejian testified, Your Honors, he wasn't arrested because the government of Georgia was so concerned about Armenians and evangelicals. He was arrested because he was just basically just involved in public disorder. He would just go out there and just beat people up and just conduct things that are just outright illegal, not because they were really concerned about the rights of the minorities. Why would he beat people up? I'm sorry? Why would he beat people up? He was an extremist priest, Your Honors. I think Dr. Deknejian— I believe I'm obviously calling him a fascist at one point. He just would go out around and beat up just minorities and whoever he didn't agree with. He was arrested, Your Honors. He served a few years in jail. But he's out. He has his own congregation again, and he's still free to do as he wishes in Georgia. Okay. Thank you. I'll give you a minute for rebuttal. Thank you. May it please the Court, Matt Craig on behalf of the government. Your Honors, this case, the petitioner has had an opportunity to have her case reviewed before three separate agency decision makers, both the asylum officer, the immigration judge, and the board all denied her claims. Well, that's true in all these cases that come to us. Not necessarily. Sometimes there are defensive asylum applications, so they don't have that first level of review with the asylum officer. With respect to the adverse credibility determination, which is a dispositive issue, if you conclude, as you should, that the record does not compel that she testified credibly, then you don't have to go any further, Your Honor. You do have to show that there was substantial evidence in respect to each credibility finding. Is that right? Actually, I believe it's the petitioner's burden to show that the record compels a conclusion contrary to that reached by the agency, Your Honor. Well, there's the flip side. There's no substantial evidence. Correct, Your Honor. If I was to point to substantial evidence that supports the record, then it can't compel a conclusion. With respect to the adverse credibility decision, with the x-ray question that Your Honor brought up, I would note that when she was asked, were you ever x-rayed when you went to see the doctor? And this is on page 210 of the record. She says, well, they call the procedure the field of vision, and they check your eyesight. And as for x-rays, well, they x-ray a person only when he or she has a concussion. So the methods that they use there are quite different from those that we do here. Now, the answer isn't exactly responsive to the question, and that's why you defer to the immigration judge, who was actually there to watch the body language and kind of interpret what her meaning was. Does this go to the heart of the claim? I believe it does, Your Honor, because it relates directly to the injuries that she allegedly sustained as a result of her alleged persecution. And similarly, so a reasonable inference from that response is that she was disclaiming that she was x-rayed because she was asked. Well, she said in response, she said that they x-ray a person only when he or she has a concussion. Then she went on to explain. Correct. Her answer. Correct, Your Honor. And then, but only after they said that. They realized that she testified that she'd thrown up and her eyes were bloodshot or whatever, and so they realized that she had suffered a concussion. That's correct. And they sent her off for an x-ray. Only after. And the I.J. suggests, the I.J., if you read the I.J.'s decision, he suggests that that, you know, that she didn't, that she just made, her testimony was completely inconsistent. On the one hand, she testified she didn't have a, suffer a concussion. On the other hand, she testifies that she did. He just misreads her testimony. I don't believe that's necessarily correct, because I think the immigration judge actually interpreted that answer that I just read to you as a denial that she had been x-rayed, even though she never answered yes or no. She kind of said, well, they only x-ray people that have concussions. She testified that she did get an x-ray. That's correct, Your Honor. On the very next question, they said, well, ma'am, you testified that you received a concussion on the day that you injured your eye. And so they remind her that she had actually testified about concussion. Then she changed and said, well, yes, they did x-ray me. And so that's what the immigration judge was saying, was when she was first asked if she was x-rayed, she said, oh, well, they only do it to people who have concussions. And then when they said, well, you testified you had a concussion. So do you think it's obvious the harder we're claiming because it's inconsistent with her alleged story? Injuries. Injuries? As a result of the alleged persecution. Oh, what else do you have that might be better? Your Honor, I think the baptismal certificate and the church records. This court has held that proving that you're a member of church is easily available, collaborating evidence. And did she need collaborating evidence? I believe once her testimony was called into question with some of these other aspects, especially with regards to, like, her husband's medical records is another issue. No, but in respect to this particular issue, she said she belonged to the church. There's nothing ambiguous about that. Correct, Your Honor. But I think she was asked about whether or not she admitted that she was baptized before the asylum officer. And although the asylum officer didn't testify and there's nothing in the record, I think that gave the immigration judge a reason to suspect that maybe there's something there. And she doesn't mention her baptism in her asylum application at all. And so then that is kind of maybe an omission in her asylum application, but it kind of gave him a reason to question the veracity of her religious conversion. Now, with respect to past persecution, Your Honors, first of all, I would note that the 2008 country report is not in the record before this court. This court can't rely on it. You should view the record only as it existed before the agency, as well as the alleged release of the Father Basilio, the defrocked priest, the ex-priest, who the record evidence shows that he was arrested by the government. What about the timing of the passport applications and the visas and the daughter coming over here? I think that's another, you know, it may be a minor issue, but it was something that gave the immigration judge pause when he said – He asked her directly, did he not? Did that have anything to do with your daughter being there? And she said, no, I never considered it. Correct. But I think that it went to her veracity in the sense that she initially with the visa, she didn't think – when she said she didn't think of coming to the U.S., he found that implausible in the fact that her daughter actually obtained a visa and traveled to the U.S. within weeks of her obtaining her own passport. And she did actually later apply for visas several times to come to the U.S. She had never been to the U.S. before, though. No, she had not. And the IJA mistakenly made the reference to the fact that she had been in the United States. The government concedes that's a misstatement. With respect to past persecution, I think one of the most instructive cases is this Court's decision in the Golko, and it dealt with a similar situation. It was a Ukrainian case, but it dealt with a religious persecution. And in that case, this Court found that the record did not compel a conclusion of past persecution. And the petitioner in that case was fired from her job because of her religion, similar to the petitioner in this case. Her religious meetings were disrupted on numerous occasions, several occasions at least, where other people at the meeting were beaten, and the priest was arrested, similar to this case. The petitioner was pushed, which caused her to fall down in that case, similar to this case. Did she get a concussion? She did not, Your Honor. And did she have her eye sight? I acknowledge that that is one distinguishing fact, although I think the immigration judge kind of reasonably concluded that it may have been her concussion and her damage to her eye may have been not an intended result of the shove. I think it was kind of almost like an accident. I think the immigration judge used the word accidental result of. When you get violently shoved and this happens, you're trying to tell me that we can disregard it because you didn't really mean to have that happen? I'm not trying to, you know, make light of the situation, but in this other case she was shoved and she fell down as well. But she didn't have a concussion. She didn't have a concussion, Your Honor. She was never arrested or beaten, just like the petitioner in this case, although in that case she actually had some more individual targeting, evidence of targeting. An official came to a meeting and threatened to kill them, and there was a mob that came to her house and shouted threats at her residence. And so you agree that that was not persecution in that case? I believe that that's this Court's binding precedent that held that that cannot compel the conclusion that there was past persecution. Now with regard to, if I can just backtrack a little bit to the adverse credibility, one other interesting thing is her husband's medical record. She claimed that he had a heart attack a couple of days after he was released from the police station where he was beaten. The medical record actually shows that when he was admitted to the hospital, he was complaining of, of course, some pains in the chest, but he said, otherwise I'm practically healthy, and there's no mention of any injuries as a result of the beating. So that undermines her credibility as well. Now if this... The credibility that he didn't have the heart attack? Or the connection of the heart attack with the... That he was detained and beaten. There's nothing to kind of corroborate that, and it actually kind of cuts against it where he said that he was practically healthy, where it was only supposedly a couple of days after he was beaten by the police. There's no mention of any injuries or that he even stated, yeah, I got beat up or anything like that in the medical record. Maybe he was concerned about his heart. I'm sure he was, Your Honor. If this court... So if the adverse credibility is dispositive, past persecution isn't necessarily dispositive, but because the agency didn't apply any presumption of well-founded fear, if this court were to conclude that the record compels past persecution, you should remand it to the agency to apply that presumption in the first instance. Otherwise, you can go ahead to the well-founded fear without the presumption, and I think that the record reasonably shows that a reasonable fact finder can conclude that there's no well-founded fear. What about the expert's testimony? The expert's testimony, he testified that... I think that his testimony was consistent with the country reports. It shows that there's discrimination against ethnic minorities and religious minorities. But he testified that he believed any kind of discrimination or anything amounted to persecution. And so when they asked him what he meant by persecution, he said, oh, well, if they're discriminated or... Of course, he talked about beatings and more severe forms of mistreatment, but he also included lesser forms such as harassment and discrimination. So I don't think that that's compelling evidence to show that there is a well-founded fear. But I would note that in the country report on page 275, it shows that the Minister of Internal Affairs created a deputy ministry post that's responsible for religious freedom and to investigate religious violence. Also, after issuing a special order regarding religious freedom, the police participation or acquiescence in religious violence decreased. And also, there's also the evidence that that Defrock priest, Mr. Vasili, was arrested and was on trial. And that's what the agency had to go on. And that's substantial evidence that supports their finding of a well-founded fear. With that, Your Honor, I respectfully request that you deny the petition for review. I don't want to beat a dead horse, but I think we're dealing with a textbook example of selective reading here. It's just comical, you know, it's how the government keeps referring to missing things, but then completely ignores things that don't support their position. If we're to assume things, why don't we also assume that the hospital that the husband went to is a state-owned hospital? So maybe the hospital didn't want to write that our country beats up people and then basically releases them for no reason at all. It's funny that the government mentions that the medical record pertaining to eye injury doesn't mention the concussion, but yet if you actually do read the report, if you take the time to read the report as opposed to assuming things, it says that she suffered an eye injury as a result of trauma. Trauma could also include a head injury, which would mean a concussion. One more thing I want to address, Your Honor, is Dr. Dick Major himself testified that he works for the Department of State, and he said that the reason that basically the country reports are not too critical of Georgia is because Georgia is a very loyal U.S. ally. So we tend to be nicer in our reports to countries that are our allies as opposed to countries that basically we don't like, that are not on our side. So that's why the reports are kind of not too, I believe, informative of the conditions in Georgia. And if we're to compare cases, Your Honor, if we're going to analogize this case with anything, the case of Ovitova from this circuit, Your Honor, is exactly analogous with the facts of this case. It's based on expert testimony, and this court in fact found withholding, the right to withholding as well as remand for asylum specifically based on expert testimony, which this judge convened in the morning on. So thank you. Thank you, counsel. We appreciate the arguments from both sides. That is submitted. And we go next to Estrada.
judges: Walter, Fletcher B. , Paez